UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMAR McKAY,

          Petitioner,               Case No. 2:22-CV-10345

    v.                             Hon. George Caram Steeh

GEORGE STEPHENSON,

          Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Lamar McKay, ("Petitioner"), incarcerated at the Macomb Correctional Facility in New Haven, Michigan, filed a *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging his conviction for first-degree premeditated murder, Mich. Comp. Laws § 750.316(a), felon in possession of a firearm, Mich. Comp. Laws § 750.224f, possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b, and being a fourth felony habitual offender, Mich. Comp. Laws § 769.12.  For the reasons stated below, the petition for a writ of habeas corpus is DENIED.

## I. Background

Petitioner was convicted following a jury trial in the Wayne County

Circuit Court.  This Court recites verbatim the relevant facts relied upon by

the Michigan Court of Appeals, which are presumed correct on habeas

review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g. Wagner v. Smith,* 581

F.3d 410, 413 (6th Cir. 2009):

> This case arises from a shooting incident that resulted in the death of the victim. Edward Fuller was at a house with defendant and two other men. A few hours before the incident, Fuller heard defendant talking about the victim, stating "[h]e wasn't taking no more a** whoopings from [the victim]." Defendant indicated that the victim owed him money, and that defendant had tried calling the victim that day, presumably to collect the money owed, but the victim did not answer his phone. That evening, while Fuller was in one of the back bedrooms of the house and defendant was in the kitchen, Fuller heard the doorbell ring followed by a loud boom.
>
> Fuller went to the front door and saw defendant, with a shotgun in his hand, chasing the victim toward the victim's vehicle that was parked near the street. Fuller followed defendant and the victim out to the street. Fuller then witnessed defendant shoot the victim as the victim ran away, at close range, causing the victim to fall down onto the street. Defendant threw the shotgun on the ground, but when Fuller started to approach defendant, defendant picked the shotgun back up and pointed it at Fuller, causing Fuller to run back to the house. As Fuller ran, he saw defendant hit the victim with the butt of the shotgun and then search the victim's pocket. Inside the house, Fuller locked the door and called the police.
>
> When the police arrived, Detroit Police Officer Joevarka Tyus witnessed the victim's body lying on the ground with multiple gunshot wounds and one of his pant pockets turned out. The

officers recovered a handle from a shotgun near the victim's body, which was found to contain the DNA of both defendant and Fuller. Detroit Police Officer Eric Smith saw footprints in the snow in the rear of the house. Following the footprints, Officer Smith found a cap to a shotgun magazine tube, a wooden foregrip from a shotgun, a 12-gauge shotgun shell, and some of the victim's personal belongings in the snow. These items were not tested for DNA evidence because they were covered in snow and wet and, as a result, purportedly had no evidentiary value. Detroit Police Sergeant Steven Ford obtained video surveillance from the night of the incident from two nearby locations. One of the videos showed a "young man walking down the street with the gun" about the time of the incident.

*People v. McKay*, No. 350616, 2021 WL 520067, at *1 (Mich. Ct. App. Feb. 11, 2021), *lv. den.*, 507 Mich. 1007, 961 N.W.2d 194 (2021).

Petitioner seeks a writ of habeas corpus on the following grounds: (1) the evidence was insufficient to convict, and (2) petitioner was denied the effective assistance of trial counsel.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  Discussion

**A. Claim # 1.  The insufficiency of evidence claim.**

Petitioner argues that the trial court erred in denying his motion for a directed verdict, because there was insufficient evidence of premeditation

and deliberation to support his first-degree murder conviction.[1] The Supreme Court has indicated that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original).

When addressing a sufficiency of evidence challenge, the reviewing court must give circumstantial evidence the same weight as direct

---

[1]Petitioner's claim involving the trial court's failure to direct a verdict of acquittal is construed as an attack on the sufficiency of the evidence. *See United States v. Cope*, 312 F.3d 757, 778 (6th Cir. 2002).

evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)(internal quotation omitted); *see also Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008)("A conviction may be sustained based on nothing more than circumstantial evidence.").  Moreover, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003)(quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 n.17 (1957)); *see also Holland v. United States*, 348 U.S. 121, 140 (1954)(circumstantial evidence is "intrinsically no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more.").

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's adjudication of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can

sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

The Michigan Court of Appeals rejected petitioner's claim as follows:

> The evidence showed that defendant and the victim had a preexisting relationship wherein the victim purportedly owed money to defendant. On the day of the incident, evidence suggests that defendant tried calling the victim several times to collect money from the victim, stating he would take "no more a** whoopings from [the victim]." Shortly thereafter, the victim rang the doorbell and was immediately shot by defendant. Defendant suggests that shooting the victim after the victim rang the doorbell was not premediated because it was an instantaneous action. This argument is confusing. There is no indication that defendant acted "on a sudden impulse," nor is there any evidence that defendant was triggered by any immediate or imminent fear of the victim. Moreover, the argument completely ignores the fact that defendant chose to chase the victim into the street and fire his shotgun at the victim a second time. Even assuming arguendo that the first shot lacked the requisite intent, defendant had ample time between the first and second shots to evaluate his actions.

*People v. McKay*, 2021 WL 520067, at *3 (internal citation omitted).

To convict a defendant of first-degree murder in Michigan, the state must prove that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002)(citing *People v. Schollaert*, 194 Mich. App. 158; 486 N.W.2d 312, 318 (1992)).  The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001)(citing *People v. Anderson*, 209 Mich. App. 527, 537; 531 N. W. 2d 780 (1995)). Premeditation may be established through evidence of the following factors:

     1. the prior relationship of the parties;
     2. the defendant's actions before the killing;
     3. the circumstances of the killing itself;
     4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer,* 383 F.3d 485, 491 (6th Cir. 2004); *Anderson*, 209 Mich. App. at 527.

Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *See Williams v. Jones,* 231 F. Supp. 2d 586, 594-95 (E.D. Mich. 2002)(quoting *People v. Vail,* 393 Mich. 460, 469; 227 N.W. 2d 535 (1975)).  "A few

seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." *Alder v. Burt,* 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003). "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." *Johnson,* 159 F. Supp. 2d at 596 (quoting *People v. Berthiaume*, 59 Mich. App. 451, 456 (1975)). Premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *See People v. Berry*, 198 Mich. App. 123, 128; 497 N.W.2d 202 (1993). Use of a lethal weapon will support an inference of an intent to kill. *Johnson,* 159 F. Supp. 2d at 596 (citing *People v. Turner*, 62 Mich. App. 467, 470; 233 N.W.2d 617 (1975)). Finally, premeditation and intent to kill may be inferred from circumstantial evidence. *See DeLisle v. Rivers,* 161 F.3d 370, 389 (6th Cir. 1998).

In the present case, there was sufficient evidence for a rational trier of fact to conclude that petitioner acted with premeditation and deliberation when he shot the victim. The evidence established that petitioner had been engaged in an argument with the victim over money prior to the shooting. Evidence that petitioner had a prior dispute with the victim supports a

reasonable inference that the subsequent shooting was premeditated.

*Scott,* 302 F.3d at 603.  Petitioner also shot the victim in the face at close range. (ECF No. 10-11, PageID.547-48). Under Michigan law, premeditation may also be logically inferred from wounds inflicted on vital parts of the victim's body. *See Lundberg v. Buchkoe,* 338 F.2d 62, 69 (6th Cir. 1964). Evidence that the victim had been shot in the face at close range supports a finding of premeditation and deliberation. *See Thomas v. McKee*, 571 F. App'x 403, 407 (6th Cir. 2014); *Crenshaw v. Renico,* 261 F. Supp. 2d 826, 833 (E.D. Mich. 2003). Petitioner fired multiple gunshots, which would also be sufficient to establish premeditation and deliberation. *See Thomas v. McKee*, 571 F. App'x at 407. The fact that there was a pause between the first gunshot and the second gunshot would permit a rational trier of fact to conclude that petitioner had time to subject his actions to a second look, so as to support a finding that he acted with premeditation and deliberation. *See Peoples v. Lafler*, 734 F.3d 503, 518 (6th Cir. 2013). The victim also was running away at the time he was shot. Petitioner's act of firing a gun while the victim was attempting to run away also supports a finding of premeditation and deliberation. *Id.* Moreover, the fact that petitioner fled the scene afterwards also supports a finding of

premeditation. *See e.g. Marsack v. Howes*, 300 F. Supp. 2d 483, 492 (E.D. Mich. 2004).

A federal court's review on habeas is very deferential to the state courts regarding sufficiency of evidence claims. This Court cannot say that the Michigan Court of Appeals' rejection of petitioner's insufficiency of evidence claim resulted in a decision that was contrary to, or involved an unreasonable application of *Jackson*. *Durr v. Mitchell,* 487 F.3d 423, 448 (6th Cir. 2007). "While there may have been other possible conclusions that the jury could have drawn from the evidence, a determination of premeditation 'beyond a reasonable doubt' does not require a jury to find that the evidence eliminates every other reasonable theory except that presented by the prosecution." *Titus v. Jackson*, 452 F. App'x 647, 650 (6th Cir. 2011).

Finally, petitioner argues that the evidence was insufficient to convict him because Fuller was a drug user and thus not a credible witness.

Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F.3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F.3d 265, 286

- 11 -

(6th Cir. 2000). The mere existence of sufficient evidence to convict

therefore defeats a petitioner's claim. *Id.* Indeed, the testimony of a single,

uncorroborated prosecuting witness or other eyewitness is generally

sufficient to support a conviction, so long as the prosecution presents

evidence which establishes the elements of the offense beyond a

reasonable doubt. *Brown v. Davis,* 752 F.2d 1142, 1144-1145 (6th Cir.

1985). Petitioner's insufficiency of evidence claim rests on an allegation of

the witness's credibility, which is the province of the jury. Petitioner is

therefore not entitled to habeas relief on this claim. *See Tyler v. Mitchell,*

416 F. 3d 500, 505 (6th Cir. 2005).

### B. Claim # 2. The ineffective assistance of counsel claims.

Petitioner argues in his second claim that trial counsel was

ineffective.

To prevail on his ineffective assistance of counsel claim, petitioner

must show that the state court's conclusion regarding his claim was

contrary to, or an unreasonable application of, *Strickland v. Washington*,

466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123

(2009). *Strickland* established a two-prong test for claims of ineffective

assistance of counsel: the petitioner must show (1) that counsel's

performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Petitioner first argues that trial counsel was ineffective for failing to request a mental status examination in order to raise an insanity defense.

Petitioner's claim is without merit because he failed to present any evidence, either to the state courts, or to this Court, that he was legally insane at the time of the crime. *See e.g. Sneed v. Johnson,* 600 F.3d 607, 611 (6th Cir. 2010). Moreover, petitioner failed to show that he has an expert who would testify that he was legally insane at the time of the offenses, thus, counsel's failure to raise an insanity defense was not prejudicial to petitioner. *See Abdur'Rahman v. Bell,* 226 F.3d 696, 715 (6th Cir. 2000).

Secondly, as one court has noted: "[t]here is considerable empirical evidence that insanity pleas in and of themselves are not received favorably by jurors." *Weekley v. Jones*, 76 F.3d 1459, 1463 (8th Cir. 1996)(citing C. Boehnert, Characteristics of Successful and Unsuccessful Insanity Pleas, 13 Law and Human Behavior 31, 34, 36-37 (1989)). Since insanity or mental defenses are rarely successful, it would not have been unreasonable for counsel, at least under the facts of this case, to forego such a defense for a stronger defense theory. *See e.g. Silva v. Woodford,*

279 F.3d 825, 851 (9th Cir. 2002); *see also Sneed,* 600 F.3d at 611

(counsel not ineffective in failing to present insanity defense where "public's

widespread skepticism of the insanity defense at the time of Sneed's trial in

1986 (circa the John Hinkley trial), indicate that this was not an attractive

defense"). Petitioner is not entitled to relief on this part of his second claim.

Petitioner also argues that trial counsel was ineffective for failing to

have all of the items recovered by the police tested for DNA evidence.

The Michigan Court of Appeals rejected the claim as follows:

> During their investigation, the police recovered multiple pieces
> of a shotgun near [the] scene. However, because of the winter
> conditions, it was opined that the snow destroyed any potential
> evidentiary value on all but one of the pieces, i.e., the shotgun
> handle, which was tested and revealed defendant's DNA was
> present. In addition to defense counsel's belief that the items
> did not have evidentiary value, defense counsel might also
> have strategically declined to have the items tested for fear that
> they would have revealed further inculpatory DNA evidence.
> After all, defendant's DNA was found on one of the shotgun
> pieces and there was eyewitness testimony of defendant
> shooting the victim, and video surveillance showed defendant
> walking to the area where the other items were discovered.
> Likewise, Fuller's testimony created a reasonable risk that only
> defendant's DNA would have been found on the other items,
> i.e., the magazine cap and shotgun shell. As a result, additional
> DNA evidence incriminating defendant would have made it
> difficult for trial counsel to minimize the damaging effect of that
> evidence. On that basis, we conclude that defendant has not
> overcome the presumption that trial counsel made a strategic
> decision not to request DNA testing of all of the items collected
> by the police. We further note that, in light of the overwhelming
> evidence, defendant has failed to demonstrate any prejudice
> related to his ineffective-assistance-of-counsel claim.

*People v. McKay*, 2021 WL 520067, at *5 (internal citation and footnote omitted).

Defense counsel's failure to request that the additional items be tested for DNA under these circumstances was a reasonable trial strategy that defeats petitioner's ineffective assistance of counsel claim. *See e.g. Holland v. Rivard*, 9 F. Supp. 3d 773, 794 (E.D. Mich. 2014), *aff'd*, 800 F.3d 224 (6th Cir. 2015); *cert. denied*, 136 S. Ct. 1384 (2016). Petitioner is not entitled to relief on the remainder of his second claim.

## IV. Conclusion

The Court will deny the petition for a writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

According, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

IT IS FURTHER ORDERED that a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**.

s/George Caram Steeh
HON. GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated: September 11, 2023

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 11, 2023, by electronic and/or ordinary mail and also on Lamar McKay #165513, Macomb Correctional Facility, 34625 26 Mile Road, New Haven, MI 48048.

s/Michael Lang
Deputy Clerk

---